ORIGINAL

FILED IN CLERK'S OFFICE
U S D C  Atlanta

JUN 2 1 2007

JAMES N. HATTEN, CLERK
By: _____
Deputy Clerk

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

| | |
|---|---|
| CRYSTAL HYDE,<br><br>     Plaintiff,<br><br>vs.<br><br>K.B. HOME, INC. and DANIEL J. WAIBEL,<br><br>     Defendants. | **1:07-CV-1456**<br><br>Case No.: _____<br><br><br>**TWT** |

## COMPLAINT

COMES NOW the Plaintiff Crystal Hyde, and shows as follows:

### *JURISDICTION AND VENUE*

1.

Plaintiff Crystal Hyde is, and has been at all times relevant hereto a citizen of the State of Georgia residing in Clayton County, Georgia.

2.

Defendant K.B. Homes, Inc. ("KB Home" or "KB") is a citizen of the State of California, with its principal place of business being located in the State of California.

205190 1

3.

Defendant KB Home can be served with process by service on a person authorized to accept service at its offices located at 2957 Clairmont Rd, NE, Suite 505, Atlanta, GA 30329, Fulton County.

4.

Defendant KB Home does business in Georgia, including employment of the Plaintiff for some time at its offices in Fulton County, Georgia, but is not registered to do business in Georgia.

5.

Defendant KB Home is subject to the jurisdiction of this Court on the grounds that this case involves a federal question pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1343, as well as pendent and supplemental jurisdiction under 28 U.S.C. § 1367, as this matter involves a substantial federal claim arising out of a common nucleus of operative fact with Plaintiff's state law claims.

6.

Defendant KB Home is subject to venue in this Court pursuant to 28 U.S.C. § 1391(b) and (c), in that one or both Defendants resides in this District and a substantial part of the events and omissions giving rise to Plaintiff's claims occurred within this District.

205190 1

7.

Defendant Daniel J. Waibel ("Waibel" or "Waibel") is an individual residing in Fulton County, Georgia.

8.

Defendant Waibel may be served with process at his residence located at 735 Mill Circle, Alpharetta, Georgia 30022, Fulton County.

9.

Defendant Waibel is subject to the jurisdiction of this Court on the grounds that this case involves a federal question pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1343, as well as pendent and supplemental jurisdiction under 28 U.S.C. § 1367, as this matter involves a substantial federal claim arising out of a common nucleus of operative fact with Plaintiff's state law claims.

10.

Defendant Waibel is subject to venue in this Court pursuant to 28 U.S.C. § 1391(b) and (c).

205190 1

## *ALLEGATIONS OF FACT*

### 11.

The Plaintiff was hired by KB Home in December of 2004 as the assistant to Defendant Waibel, the Vice President of Architecture at KB Home.  Waibel was Plaintiff's direct supervisor at KB Home and the highest ranking person in Plaintiff's office.

### 12.

Within the current or preceding calendar year with respect to the discrimination alleged herein, KB Home employed in excess of 500 employees for at least twenty weeks.

### 13.

During the course of her employment prior to February of 2006, Plaintiff received reviews of her job performance that showed that she consistently met or exceeded her employer's expectations, including a job performance review on or about January 18, 2006. At all times relevant hereto, Plaintiff was able to perform her job.

### 14.

Prior to revealing her pregnancy to Waibel, Plaintiff worked extensively on the Deltek billing system and as the assistant to Waibel.   Plaintiff's job

- 4 -

responsibilities included reporting and updating the billing system, inserting new projects on the billing system, getting Waibel licensed in other states in which KB Home had recently began building houses, travel, office management and ordering, booking travel for other managers and assisting the design team, among other responsibilities.

15.

In or around January of 2006, Plaintiff discovered that she was pregnant. On or about January 29, 2006, Plaintiff met with Waibel to inform him that she was pregnant. Waibel's response was to curse and direct her to check about time off of work.

16.

Waibel treated the Plaintiff with hostility after the announcement of her pregnancy. By February of 2006, Waibel ceased talking to the Plaintiff and gave the Plaintiff dirty looks. When the Plaintiff would attempt to speak with him, Waibel would keep on walking and ignore her. Plaintiff was treated disparately as compared with other administrative employees.

205190 1

17.

The Plaintiff's pregnancy was high risk as a result of having had a prior pregnancy loss and as a result of a medical condition which threatened the development of her child's heart.

18.

Upon information and belief, Waibel was angry about the Plaintiff being pregnant and was angry about her missing work for doctors' appointments. Waibel refused to allow the Plaintiff to come in and work around doctors' appointments as other employees with continuing medical issues were allowed to do. He insisted that the Plaintiff have a set schedule.

19.

To accommodate Waibel's request that Plaintiff have a "set schedule," on March 6, 2006, Plaintiff's doctor cleared Plaintiff to work from 10:00 A.M. to 4:00 P.M. without restrictions.

20.

On March 6, 2006, Waibel requested that Plaintiff go on maternity leave without pay in March through the remainder of her pregnancy, though she was due to give birth in June. Plaintiff could not afford to miss work for such a long period of time and advised him that her doctor cleared her to work from 10:00 A.M. to

4:00 P.M.  She also advised Waibel that she had a high risk pregnancy due to prior pregnancy loss and that she was taking progesterone.

21.

Upon information and belief, Waibel forwarded Plaintiff's email with her confidential medical information concerning her previous pregnancy loss to another administrative employee.  At the same time, Waibel complained about his suspicion that Plaintiff had sent an email to human resources complaining about him, commenting: "She is a tainted employee and I want her [expletive] out of here."

22.

Upon information and belief, frustrated that he could not fire the Plaintiff, Waibel instead dramatically changed the Plaintiff's work assignments and responsibilities and withdrew previously offered opportunities for advancement. Upon information and belief, Waibel reduced Plaintiff's rate of pay to $17.55 per hour from her previous annual salary average of $18.55 per hour.

23.

Upon learning of Plaintiff's pregnancy, other employees were trained to take over human resources responsibilities which Waibel had indicated that Plaintiff would take over when another employee left KB Home.

- 7 -

24.

A temporary administrative assistant was hired on or about April 3, 2006. Upon information and belief, Waibel hired this employee to take over other responsibilities of the Plaintiff, including her responsibilities as his assistant.

25.

Tests confirmed that Plaintiff's unborn child had congenital heart block. Plaintiff was put on a course of steroids to reduce inflammation and help the baby's lungs develop. Plaintiff began seeing a pediatric cardiologist, in addition the obstetrician and perinatologist. Plaintiff was informed that there was a chance that her child would not survive.

26.

Undeterred by the already fragile condition of the Plaintiff, Waibel continued to attempt to constructively terminate the Plaintiff. Upon information and belief, Waibel set in motion a plan to force administrative requirements on the Plaintiff which were not required of other employees with continuing medical conditions. Upon information and belief, Waibel hoped that the Plaintiff failing to meet any of these new requirements would give him an alternate basis for terminating Plaintiff's employment.

205190 1

27.

During this time, Waibel was communicating through an assistant, as he would still not speak to or acknowledge the Plaintiff. Each week, this assistant would call the Plaintiff with new administrative requirements that Waibel imposed on the Plaintiff. This assistant was the human resources representative for KB Home in Plaintiff's office.

28.

By way of example, Waibel required that Plaintiff share her confidential medical information with all of the managers. Per Waibel's request, Plaintiff submitted a doctor's note to all of the managers in the office listing the medications which she took.

29.

Despite the Plaintiff adhering to a previously set schedule, Waibel began complaining that he did not know where Plaintiff was and that the Plaintiff was missing too many hours of work. He required that Plaintiff take unpaid intermittent leave and fill out intermittent leave sheets every week. Upon information and belief, other employees with continuing medical conditions were not required to do this.

-9-

30.

On May 15th, Plaintiff was informed that she would have to turn in doctors' letters every day because Waibel was still complaining that he did not know where she was. Until this point, Plaintiff had been doing as other employees were allowed to do, turning in letters at the end of each pay period.

31.

Upon information and belief, on May 1, 2006, Waibel requested that the director of production begin paperwork to have the Plaintiff's employment terminated. Waibel told the director that he was tired of Plaintiff using her doctor letters to get time off work and that he was sick of looking at her.

32.

Upon information and belief, the director of production reported to the human resources department that Waibel was attempting to retaliate against the Plaintiff for being pregnant.

33.

On May 19, 2006, Waibel required that Plaintiff's requests for intermittent leave be submitted directly to him instead of to the director of production.

- 10 -

34.

In May 2006, Plaintiff informed KB Home that she would begin her maternity leave under the Family and Medical Leave Act ("FMLA"). Plaintiff was informed that she would have to return to work six to eight weeks after having her child. KB Home would not allow Plaintiff to use any of her accumulated vacation time, though other similarly situated employees were allowed to do so.

35.

Plaintiff gave birth to a baby girl on June 23, 2006. Her child was born with a heart block condition and was transported to Egleston Children's Hospital almost immediately, where she stayed in the children's intensive care unit. The child received a pacemaker and was released from the hospital in the middle of July.

36.

On or about August 1, 2006, Plaintiff sent an email to KB Home's human resources department located outside of the Plaintiff's office and to Waibel informing them that she could return to work on August 16, 2006.

37.

Plaintiff returned to work on or about August 16, 2006. Plaintiff returned to the same hostile working environment and even lesser responsibilities.

205190 1

38.

On or about August 22, 2006, Plaintiff contacted human resources to inquire as to her status. She reported that after she returned from maternity leave, Waibel was still ignoring her and had a temporary administrative assistant fulfilling her job responsibilities.

39.

On August 23, 2006, Waibel called a meeting. Waibel completely ignored the Plaintiff, refusing to look at her. Waibel proceeded to assign the Deltek reporting work (which had previously been Plaintiff's work prior to her announcement of her pregnancy) to another employee and assigned Plaintiff to do menial tasks.

40.

On the morning of August 24, 2006, Plaintiff attempted to clear the air by meeting with Waibel. Waibel confirmed that the problem was her pregnancy and her inability to trust her with his work if she was going to eventually go on maternity leave. Waibel questioned whether she would report his conduct to human resources and cursed at the Plaintiff.

41.

As a result of a retaliatory complaint by Waibel following the meeting with Waibel, Plaintiff met with a representative from human resources. Plaintiff informed the HR representative of Waibel's discriminatory conduct.

42.

The human resources department did nothing regarding Waibel's conduct throughout the remainder of August.

43.

On or about September 1, 2006, Plaintiff was assigned to work for the Vice President of Finance for KB Home, who worked in a different office in another state. Plaintiff was assured that the types of things which happened under Waibel's watch would not happen again.

44.

On or about September 4, 2006, Waibel returned to the office to find that the Plaintiff was still employed by KB Home. He expressed surprise and disgust. Upon information and belief, Waibel either resigned from KB Home or was fired.

45.

KB Home never returned, and never intended to return essential and recurring work assignments that the Plaintiff had lost as a direct result of the

205190 1

conduct of Waibel.   Instead, it merely waited to terminate the Plaintiff until sufficient time had passed to avoid the appearance of unlawful discrimination.

46.

Plaintiff was rendered expendable by the conduct of Waibel described herein, including the withdrawal of work assignments and opportunities for advancement.

47.

KB Home knew, or in the exercise of reasonable care should have known, about the harassment of the Plaintiff by Waibel and failed to take adequate and proper remedial action

48.

KB Home's alleged remedial measures did not restore what Plaintiff lost through Waibel's conduct, including job responsibilities and opportunities for advancement.

49.

On or about September 19, 2006, though KB Home never established a real position for the Plaintiff, a representative from human resources and a manager met with Plaintiff to notify her that her "position was being eliminated."  Upon information and belief, similarly situated employees were not terminated.

- 14 -

205190 1

50.

Upon information and belief, Plaintiff's termination (and the lack of need for her job "position") was proximately caused by discrimination and the effects of discrimination on the basis of pregnancy, taking federally protected leave and complaining regarding discriminatory conduct.

51.

Upon information and belief, KB Home's motive reason for terminating Plaintiff's employment was, in whole or in part, based on unlawful discrimination and the effects of unlawful discrimination against Plaintiff by reason of her gender, pregnancy, pregnancy-related conditions, the fact that she took protected leave and the fact that she complained about discriminatory conduct.  At best, Plaintiff's termination was based on mixed motives.

52.

Plaintiff was rendered of little use to KB Home as a proximate result of the discriminatory conduct set forth herein and as a proximate result of KB Home failing to take reasonable remedial measures with respect to the aforesaid discrimination.

205190 1

53.

KB Home is directly liable and vicariously liable for the conduct of Waibel by virtue of it employing Waibel and by proxy, by virtue of respondeat superior and by virtue of Waibel being a supervisor with immediately (or successively higher) authority over the Plaintiff, by virtue of him being a corporate officer and by virtue of him being in the upper echilons of management of KB Home and in the office in which Plaintiff worked.

54.

As set out above, Plaintiff was a member of a protected class, and was subjected to adverse and tangible employment actions.

55.

Other employees outside of Plaintiff's gender and medical classifications were treated more favorably than her by KB Home.

56.

Other employees outside of Plaintiff's gender and medical classifications were treated more favorably by Waibel.

57.

At all times relevant hereto, Plaintiff was qualified to do the work she was assigned.

- 16 -

58.

As set forth above, Plaintiff was subjected to a hostile work environment as a result of her gender and medical classifications.

59.

As set forth above, the terms, conditions and privileges of Plaintiff's employment were affected by the discrimination set forth above.

60.

KB Home's harassment policy was defective and dysfunctional and administered in bad faith.  Plaintiff had a credible fear that her complaints would fall on deaf ears.  By way of example, early in her pregnancy, Waibel expressed distrust of her for his belief that she had complained to human resources.  By way of further example, one division manager had complained regarding Waibel to human resources and was thereafter sworn at in meetings by Waibel and then was asked to resign.  By way of further example, Waibel had expressed retaliatory motivations towards a design employee whom Waibel thought had gotten him moved out of the design department.  Waibel commented that once he was back in control of design, he would fire that person.  By way of further example, HR did nothing after the director of production complained about Waibel's discrimination against the Plaintiff.  By way of further example, when one production employee

- 17 -

went to human resources, Waibel referred to him as a back-stabber and "Benedict Arnold." Any perceived failure by Plaintiff to complain to purportedly appropriate personnel at or near the time of events set forth herein should therefore be excused by reason of Defendant's defective and dysfunctional harassment policy.

61.

Upon information and belief, KB Home had actual and constructive knowledge of Waibel's harassment of the Plaintiff, the hostile work environment that Plaintiff worked in and prior misconduct of Waibel, but failed to take prompt and adequate remedial action.

62.

Waibel's conduct, as aforesaid, constituted intentional or reckless conduct that was extreme and outrageous enough to cause severe emotional distress to the Plaintiff and which did cause Plaintiff severe emotional distress.

63.

Upon information and belief, higher management at KB Home countenanced, approved and ratified the offending behavior of Waibel.

64.

The work environment which the Plaintiff was subjected to, as set forth above, was both objectively and subjectively offensive, one that a reasonable

- 18 -

205190 1

person would find hostile and abusive and one which the Plaintiff did, in fact, perceive to be hostile and abusive.

65.

The conduct of Waibel and KB Home unreasonably interfered with the Plaintiff's work performance.

66.

At all times relevant hereto, Plaintiff reasonably availed herself of any protections from harassment afforded by KB Home.

67.

Plaintiff filed a written charge of discrimination with the EEOC on or about October 5, 2006, and amended it on or about October 19, 2006.  Exhibits A and B. A Right to Sue Letter was issued by the Equal Employment Opportunity Commission ("EEOC") on or about May 22, 2007.  Exhibit C.

### COUNT I
### VIOLATION OF TITLE VII
### GENDER-BASED DISCRIMINATION
### WITH TANGIBLE EMPLOYMENT ACTION

68.

The foregoing paragraphs are realleged, restated and incorporated herein as though fully set forth herein.

- 19 -

69.

Plaintiff is a female, and is a member of a protected class under Title VII of the Civil Rights Act of 1964, as well as under the Pregnancy Discrimination Act amendments to Title VII.

70.

The aforesaid acts and omissions of KB Home, directly and by and through its agents, officers, managers, supervisors and proxies, including but not limited to Defendant Waibel, including the failure to have a properly functioning harassment policy, the failure to remedy the effects of discrimination by Waibel, discrimination in the terms, privileges and conditions of Plaintiff's employment, harassment of the Plaintiff and condoning the existence of a hostile work environment, were in violation of KB Home's duty not "to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1).

71.

KB Home acted intentionally, willfully and wantonly or alternatively, with reckless indifference or negligence to Plaintiff's federally protected rights.

205190 1

72.

Plaintiff has suffered damages as a foreseeable result of the aforesaid conduct of KB Home, for which KB Home should be held strictly and otherwise liable.

73.

The aforesaid gender-based discrimination by Defendant Waibel and the failure of KB Home to take adequate remedial measures to remedy discrimination in the terms, conditions and privileges of Plaintiff's employment unreasonably interfered with Plaintiff's work performance and created an intimidating, hostile and offensive working environment.

74.

As a direct and proximate result of Defendant KB Home's above-mentioned discriminatory actions and omissions, Plaintiff has suffered and continues to suffer lost wages and benefits, and was caused significantly diminished employment opportunities.  Plaintiff has also suffered severe emotional distress, anxiety, humiliation and pain and suffering for which Defendant KB Home is directly liable, strictly liable and vicariously liable.

205190 1

## *COUNT II*
## *VIOLATIONS OF FAMILY AND MEDICAL LEAVE ACT OF 1993*
## *UNLAWFUL DENIAL OF RIGHTS AND DISCRIMINATION*

75.

The foregoing paragraphs are realleged, restated and incorporated herein as though fully set forth herein.

76.

Plaintiff was protected under the Family and Medical Leave Act because: (1) she had a serious health condition that restricted her ability to perform her job on a full-time basis, (2) she gave birth to a child and (3) she took protected leave.  29 U.S.C. § 2612(a)(1).

77.

KB Home and Waibel, directly and through their agents, officers, supervisors and proxies, including but not limited to Defendant Waibel, unlawfully interfered with, subjected her to adverse employment actions and unlawfully discriminated against her in the terms, conditions, privileges and benefits of her employment for taking federally protected leave.

78.

KB Home failed to restore Plaintiff to her employment position or an equivalent position without loss of benefits upon her returning from leave.

- 22 -

79.

As a direct and proximate result of Defendants KB Home's and Waibel's above-mentioned discriminatory actions and omissions, Plaintiff has suffered lost wages, salary, employment benefits, opportunities for advancement, damages and other compensation for which KB Home and Waibel are directly liable, strictly liable, liable by proxy and vicariously liable.

### COUNT III
### TITLE VII AND FMLA
### UNLAWFUL RETALIATION AND DISCHARGE

80.

The foregoing paragraphs are realleged, restated and incorporated herein as though fully set forth herein.

81.

As set forth above, Plaintiff's discharge was motivated in whole or in part by improper considerations, including her pregnancy, pregnancy-related conditions and gender and her reduced role in the company due to discriminatory acts by Waibel.

82.

Plaintiff's discharge was motivated, in whole or in part, by her complaints about unlawful discrimination, as aforesaid.

205190 1

83.

Plaintiff's discharge was also motivated in whole or in part by Plaintiff having taken federally protected FMLA leave.

84.

Plaintiff's discharge was a direct, proximate and foreseeable result of the discrimination set forth herein by Defendant Waibel, the failure by Defendant KB Home to take appropriate measures to remedy the aforesaid discriminatory conduct and the failure of KB Home to restore the Plaintiff to her position or an equivalent position upon return from her federally protected leave.

85.

KB Home's 'elimination of Plaintiff's position' was pretextual.  In fact, a position was never established for the Plaintiff nor was Plaintiff restored to the position she had prior to taking FMLA leave and prior to being victimized by discrimination or an equivalent position.

86.

In the alternative to the preceeding paragraph, Defendants' motivation in discharging the Plaintiff was based on mixed motives.

- 24 -

205190 1

87.

Termination of the Plaintiff was an intended and foreseeable result of the conduct of Waibel.

88.

As a direct and proximate result of Defendants KB Home's retaliatory and unlawful discharge under Title VII, Plaintiff has suffered and continues to suffer lost wages and benefits, past and future. Plaintiff has also suffered severe and grievous emotional distress, anxiety, humiliation and pain and suffering for which Defendant KB Home is directly liable, strictly liable, liable by proxy and vicariously liable.

89.

As a direct and proximate result of Defendants' retaliatory and unlawful discharge under FMLA, Plaintiff has suffered and continues to suffer lost wages, damages and benefits for which Defendants KB Home and Waibel are directly liable, strictly liable and vicariously liable.

205190 1

## *COUNT IV*
## *NEGLIGENT HIRING AND RETENTION OF DEFENDANT WAIBEL*

90.

The foregoing paragraphs are realleged, restated and incorporated herein as though fully set forth herein.

91.

At all times relevant hereto, KB Home knew or should have known that Waibel was not suited for the particular employment in which he was retained at the time of the acts set forth herein.

92.

Defendant KB Home negligently retained Waibel in his position as Vice President of Architecture and in carrying out the responsibilities he was assigned.

93.

As a direct, proximate and foreseeable result of KB Home's negligent retention of Waibel, Plaintiff has suffered and continues to suffer lost wages, damages and benefits for which KB Home is directly liable, strictly liable, liable by proxy and vicariously liable.

205190 1

## *COUNT V*
## *INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS*

94.

The foregoing paragraphs are realleged, restated and incorporated herein as though fully set forth herein.

95.

The discriminatory and harassing actions of Defendant Waibel set forth herein towards the Plaintiff constituted intentional or reckless conduct that was extreme and outrageous and which caused severe emotional distress and other damages to the Plaintiff, for which Waibel should be liable.

96.

Defendant Waibel saw fit to harassed, intimidated and discriminated against the Plaintiff on account of her pregnancy and pregnancy-related conditions. The fact that this harassment, intimidation and discrimination occurred within the context of the employer-employee relationship produced a character of outrageousness which might not otherwise have existed.

- 27 -

## *COUNT VI*
## *ATTORNEY'S FEES*

97.

The foregoing paragraphs are realleged, restated and incorporated herein as though fully set forth herein.

98.

Defendants have acted in bad faith, have been stubbornly litigious and have caused the Plaintiff unnecessary trouble and expense.

99.

Defendants are liable to Plaintiff for her reasonable attorney's fees and expenses of litigation under O.C.G.A. § 13-6-11, and by reason of liability for the commission of intentional torts.

100.

Defendants should also be held liable to the Plaintiff for her reasonable attorney's fees under 29 U.S.C. § 2617(a)(3) (FMLA) and 42 U.S.C. § 2000e-5(k) (Title VII).

-28-

## *COUNT VII*
## *PUNITIVE DAMAGES*

### 101.

The foregoing paragraphs are realleged, restated and incorporated herein as though fully set forth herein.

### 102.

The actions of Defendants set forth herein showed willful misconduct, malice, wantonness, oppression, reckless indifference and that entire want of care which would raise the presumption of conscious indifference to consequences.

### 103.

Punitive damages are authorized and should be awarded against the Defendants pursuant to O.C.G.A. § 51-12-5.1.

### 104.

Punitive damages are also authorized and should be awarded under Title VII, 42 U.S.C. § 1981a(a)(1).

WHEREFORE, Plaintiff prays:

(i)     That this Complaint be allowed and filed;

(ii)    That the Plaintiff have a trial by jury on all issues so triable;

205190 1

(iii)   That Plaintiff be awarded all back pay, front pay, lost wages, compensatory damages and pre-judgment interest allowable at law or equity with respect to her claims;

(iv)   That Plaintiff be awarded her costs and expenses of litigation, including reasonable attorney's fees, expert fees and other costs;

(v)   That Plaintiff be awarded punitive damages; and

(vi)   For such other and further relief as the Court or the finder of fact in this matter deems just and proper in the circumstances.

Respectfully submitted this _19th_ day of _June_, 2007.

**NALL & MILLER, LLP**

BY: _____

**MARK D. LEFKOW**
Georgia Bar No. 004289

**ATTORNEY FOR PLAINTIFF
CRYSTAL HYDE**

235 Peachtree Street, N.E.
Suite 1500
Atlanta, Georgia 30303
Phone: (404) 522-2200
Fax: (404) 522-2208

205190 1

- This document was prepared using Times New Roman 14 point font, one of the font sizes and typefaces allowed by Local Rule 5.1.

205190 1